UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA GERALDINE LEGUIZAMON TORRES,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden, Otay Mesa Detention Center; *et al.*,<br><br>Defendants. | Case No.: 26-cv-4603-BJC-JAC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**(ECF No. 1)** |

Before the Court is Petitioner Monica Geraldine Leguicamon Torres's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner initiated this action on August 12, 2026. *Id.* On August 28, 2026, the Court issued a briefing schedule. ECF No. 4. Respondents filed a response on September 2, 2026, and Petitioner filed her traverse that same day. ECF Nos. 5; 6. For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus.

## I. BACKGROUND

Petitioner is a native and citizen of Colombia, currently detained at the Otay Mesa Detention Center in San Diego, California. ECF No. 1 ¶ 2. Petitioner initially entered the country on August 16, 2024, at the Calexico Port of Entry. *Id.* ¶ 4. The Department of

Homeland Security ("DHS") exercised its discretionary authority under INA § 212(d)(5)(A) and paroled Petitioner into the United States. *Id.*

On May 12, 2026, while Petitioner was in Utah in connection with a criminal allegation, Immigration and Customs Enforcement ("ICE") officers arrived and took Petitioner into immigration custody. *Id.* Respondents did not provide Petitioner with notice, an opportunity to be heard, or an individualized custody determination before a neutral decisionmaker prior to her re-detention. *Id.* ¶ 7. Up until her re-detention, Petitioner resided in the community and complied with all her immigration-related obligations. *Id.* ¶ 5. The criminal matter in Utah was dismissed on June 1, 2026. *Id.* ¶ 28; *see* ECF No. 1-6, Ex. 5.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.*

## III. DISCUSSION

### A. Jurisdiction

Under 8 U.S.C. § 1252(g), except as otherwise stated, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." Although Respondents urge this Court to endorse a broad reading of this statute (*see* ECF No. 5 at 3–4), the Ninth Circuit has made clear that § 1252(g) must be read narrowly as to apply

"only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (emphasis in original) (citation omitted).

Simply put, Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at 997; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.") (citation omitted). Challenges to unconstitutional practices and policies, including due process violations, that do not arise from the Attorney General's three permitted actions are, therefore, not subject to § 1252(g). *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)).

Here, Petitioner's "objective [is] *not* to obtain judicial review of the merits of their [removal] proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id.* at 1052 (emphasis added); *see also* ECF No. 6 at 2 ("Petitioner does not challenge the Notice to Appear, the commencement or adjudication of her removal proceedings, or any decision concerning her removability. She challenges only Respondents' deprivation of her physical liberty without constitutionally adequate process."). Such claims fall squarely within the Court's habeas authority. *Id.*; *see also Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders.").

Accordingly, the Court concludes it has jurisdiction over Petitioner's claim. *Id.*; *see, e.g.*, *Komarov v. LaRose*, 2026 WL 2296992, at *1–2 (S.D. Cal. Aug. 10, 2026) (rejecting jurisdictional argument because due process challenges are not subject to 1252(g)); *Bertrand v. LaRose*, 2026 WL 2280642, at *2 (S.D. Cal. Aug. 6, 2026) (rejecting

jurisdictional argument where due process challenges were "nonetheless independent of, the removal proceedings").

**B. Due Process**

Petitioner argues that the summary revocation of her parole without notice or a hearing violates the Due Process Clause. ECF No. 1 ¶¶ 8–10, 56–58. The Court agrees.

Respondents do not explicitly address Petitioner's due process argument. Instead, Respondents assert that because Petitioner's parole had expired at the time of her re-detention, and she was served with a Notice to Appear that terminated her parole status, she was therefore subject to mandatory detention under 8 U.S.C. § 1225.[1] *See* ECF No. 5 at 4–6. This argument is unpersuasive.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting

---

[1] Petitioner was served with the Notice to Appear when she entered the United States on August 16, 2024, nearly two years before her re-detention. ECF No. 5-1 at 2.

*Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032 (citing *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225, Petitioner is subject to mandatory detention and therefore her alleged statutory and constitutional violations fail. ECF No. 5 at 4–6. The Court disagrees. Other decisions from this district have previously held that, while a noncitizen may not be deemed admitted in the United States pursuant to § 1182(d)(5)(A), the noncitizen is not necessarily subject to mandatory detention, depending on the length of time they have been in the country. *See, e.g.*, *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) (finding petitioner who was granted humanitarian parole under § 1182(d)(5)(A) "is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal.").

Here, Petitioner was granted humanitarian parole upon entry into the United States. ECF No. 1 ¶ 26; *see also* ECF No. 5 at 4–5. Petitioner is not a newly arrived noncitizen seeking admission at the border. On the contrary, Petitioner has been in the United States since August 2024. ECF No. 1 ¶ 26. Further, Respondents' contention—without explanation—that *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), is "inapplicable to Petitioner," is dubious at best. *See* ECF No. 5 at 5–6; *see also Rodriguez Vasquez*, 183 F.4th at 1165 ("[A]liens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"); *id.* at 1172 ("[W]e conclude that § 1225(b)(2)(A), based on its text and context, is best construed as applying to aliens entering the United States at the border. Section 1226, by contrast, is best understood as governing inadmissible and deportable aliens present in the interior of the United States.").

Regardless, even if Petitioner could be subject to mandatory detention under § 1225, that would not resolve the instant Petition as "many courts in the Ninth Circuit have held that the expiration of parole does not extinguish a petitioner's entitlement to due process." *Aliyev v. LaRose*, 2026 WL 699818, at *2 (S.D. Cal. Mar. 12, 2026) (collecting cases). In other words, a petitioner's private interest does not expire along with their parole agreement. *See, e.g.*, *Nayem v. LaRose*, 2026 WL 915023, at *3 (S.D. Cal. Apr. 3, 2026); *Tunaca-Galindo v. Att'y Gen. of United States*, 2026 WL 1229587, at *2 (S.D. Cal. May 5, 2026); *see also Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025) ("[P]etitioner's liberty interest did not expire along with his parole."). The expiration of one's parole "does not somehow obviate the need for the government to provide an individualized hearing prior to detaining the parolee." *L.M. v. Noem*, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026) (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025)).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before she can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Mathews* factors. *See id.* Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of her due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to her humanitarian parole. "Freedom from imprisonment—from government custody, detention, or other

forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining out of custody continuing the asylum process. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life."). Moreover, the nearly two years Petitioner spent on conditional release creates a substantial interest for Petitioner in her continued liberty. *Maria S.M. v. Chestnut*, No. 1:26-CV-03777-TLN-AC, 2026 WL 1480390, at *3 (E.D. Cal. May 27, 2026) (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.")).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing her a reason for revocation or giving her an opportunity to be heard. ECF No. 6 at 13. DHS initially determined that Petitioner should be paroled because she posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Respondents note that Petitioner was arrested in Utah for burglary of a dwelling and assault, and she was charged with burglary and domestic violence related offenses. ECF No. 5 at 2. These charges were subsequently dismissed. ECF No. 1 ¶ 28; *see also* ECF No. 1-6, Ex. 5. Notably, Respondents do not argue Petitioner is a danger to the public or a flight risk. *See generally* ECF No. 5. On this record, the fact that Petitioner has a prior arrest only highlights the necessity of procedural safeguards where a neutral decisionmaker can consider all facts and evidence to determine whether Petitioner's detention is now justified. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (noting the same); *Maria S.M. v. Chestnut*, No. 1:26-CV-03777-TLN-AC, 2026 WL 1480390 (E.D. Cal. May 27, 2026) (same); *see also R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866,

at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp. 3d at 1036; *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1130 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* ECF No. 5.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to her detention. She received neither. Thus, the Court finds Respondents violated Petitioner's due process rights.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus. ECF No. 1. Accordingly, the Court **ORDERS** as follows:

1. Respondents must immediately release Petitioner from custody, subject to the same terms and conditions on which she was previously released in August 2024.

2. Petitioner's Motion to Expedite Consideration of Petition for Writ of Habeas Corpus is **DENIED AS MOOT**. ECF No. 7.

3. Respondents are **ENJOINED AND RESTRAINED** from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show materially changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs

Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. *See Maria S.M.*, 2026 WL 1480390, at *4.

4. As this concludes the litigation in this case, the Clerk of Court is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

Dated: October 30, 2026

Honorable Benjamin J. Cheeks
United States District Judge